**Juan PABON, Petitioner,**

v.

**Robert HAKE, Superintendent, Eastern Correctional Facility, Respondent.**

**No. CV–89–2182 (ADS).**

United States District Court, E.D. New York.

May 11, 1991.

See also, 120 A.D.2d 685, 501 N.Y.S.2d 915.

Cardozo Criminal Law Clinic by Lawrence A. Vogelman and Barry C. Scheck, New York City, for petitioner.

John J. Santucci, Dist. Atty., Queens County by Gordon S. Latz, Kew Gardens, N.Y., for respondent.

## MEMORANDUM AND ORDER

SPATT, District Judge.

This Petition for a writ of habeas corpus raises the issue of whether the Fifth or Sixth Amendment of the United States Constitution was violated when a videotaped statement made by the Petitioner after he received a *Miranda* warning was admitted into evidence at trial, even though nine hours earlier the police obtained a statement from the Petitioner without first administering *Miranda* warnings. In addition, the Petitioner contends that his sentence violated the Eighth Amendment in that the sentencing Justice punished him for proceeding to trial by imposing the maximum sentence allowable under law.

## BACKGROUND

On February 15, 1982, during the attempted robbery of a Mobil service station in Astoria, Queens, two perpetrators shot and killed a service station attendant. The two men fled from the scene in a car driven by a third man. On February 16, 1982 Officer Clifford F. Barnett, accompanied by approximately five other officers, went to the Petitioner's home at 20–07 Shore Boulevard, Queens, New York while investigating the homicide and robbery of the prior evening. The police rang the Petitioner's doorbell and found him inside. While inside the Petitioner's home, and prior to administering a *Miranda* warning (*see Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 [1966] ), Officer Barnett asked the Petitioner whether he drove the car parked near his home the previous evening. The Petitioner stated that he was the driver ("Statement # 1"). Officer Barnett then told the Petitioner to accompany him to the 114th police precinct, and while getting into the police car, the Petitioner told Officer Barnett that he wanted to speak with the police about the car.

At the 114th precinct Officer Barnett read the Petitioner his *Miranda* rights, which the Petitioner waived. The Petitioner, in sum and substance, made the following oral statement concerning his involvement in the homicide and robbery the prior evening ("Statement # 2"): The two men who went into the gas station, whom the Petitioner identified as Ricardo Rivera and Juan Roman, were at the Petitioner's home earlier in the evening to sell heroin to the Petitioner and his wife. The two men then allegedly asked the Petitioner to drive them to a local gas station to get gas. The Petitioner drove Rivera and Roman to the Mobil station on the corner of 44th Street and Astoria Blvd. South in Queens, New York. The Petitioner stated that Rivera and Roman left him waiting in the car and went into the gas station; when they returned to the car they forced him, at gunpoint, to quickly drive away from the station. At the conclusion of his statement the Petitioner assisted the police in locating Rivera and Roman. After the arrest of Rivera and Roman, the Petitioner was taken to the 23rd police precinct to identify the two men.

Approximately eight hours later, at the station house, Assistant District Attorney Alexander Malewski, Jr. again read the Petitioner his *Miranda* rights. After the Petitioner again waived his rights, he made a videotaped statement concerning his involvement in the homicide and robbery ("Statement # 3"). The Petitioner's videotaped statement was, in sum and substance, identical to the oral statement given to Detective Barnett (*see* Transcript ("Tr."), pp. 132, 154 and 160), which Detective Bar-

nett described at trial (see Tr. at pp. 151–53). The Petitioner was then placed under arrest and charged with murder in the second degree and attempted robbery in the first degree.

Prior to trial a *Huntley* hearing was held (see *People v. Huntley*, 15 N.Y.2d 72, 78, 204 N.E.2d 179, 183–84, 255 N.Y.S.2d 838, 843–44 [1965]), after which Justice John L. Leahy suppressed Statement # 1 and found Statement # 2 and Statement # 3 admissible (*People v. Pabon*, Index No. 0504/82, July 21, 1982, at p. 5–6).

At trial the Petitioner was convicted of murder in the second degree (N.Y.Penal Law § 125.25[3]) and attempted robbery in the first degree (N.Y.Penal Law § 160.15). On November 18, 1982, Justice Leahy sentenced the Petitioner to twenty-five years to life on the murder count and five to fifteen years imprisonment on each of the three robbery counts, all sentences to run concurrently.

At sentencing, Petitioner's counsel indicated that prior to trial the Assistant District Attorney offered the Petitioner a guilty plea to manslaughter in the first degree (N.Y.Penal Law § 125.20) and promised a sentence of six to eighteen years, which the Petitioner refused to accept. In addition, the Petitioner's counsel stated that the Petitioner deserved special consideration for helping the police capture his alleged accomplices. In response Justice Leahy stated as follows:

"There is no doubt in my mind that this guy here set this robbery up. He was the master mind of this robbery. He was the one familiar with Astoria. He lived in Astoria for many, many years. He knew about that Mobil station up at 48th Street and Astoria Boulevard. These other two defendants didn't speak English. They knew nothing and he set it up. He was the mastermind the schemer and the planner and he didn't go inside with them because they knew him in the station. He had been there on prior occasions as a customer. He was trying to save his own skin with his cooperation and ratting on his two co-defendants. That's what he did. He ratted on them just to save his own skin.

The court has no compassion for this fellow at all, none at all."

(*People v. Pabon*, Index No. 0504/82, November 18, 1982, at p. 5–6.)

The Petitioner appealed, arguing: (1) that the entry and search of his apartment violated the Constitution; (2) that two statements he made to the police were improperly admitted into evidence at the trial; and (3) that his sentence was excessive and a penalty for exercising his right to a jury trial. The Appellate Division unanimously affirmed the Petitioner's conviction (*People v. Pabon*, 120 A.D.2d 685, 501 N.Y.S.2d 915, 916–17 [1986]). First, the Appellate Division found that the entry and search of Petitioner's residence was justified based upon "probable cause and sufficient exigent circumstances." Second, the Court held that since the Petitioner was in custody inside his house, Statement # 1 was properly suppressed. Third, the court found that the admission of Statement # 2 into evidence was error because there was no "pronounced break" between Statement # 1 and Statement # 2, but the error was "harmless, since the same information was contained in [Statement # 3 and] … properly admitted" and even had Statement # 2 been suppressed, the evidence elicited from the content of Statement # 2 would be known to the jury because the same evidence was presented through Statement # 3. Fourth, the Appellate Division did not find a Constitutional violation in the sentence imposed, holding that "[t]he Constitution does not forbid the state to offer leniency [in return] for a guilty plea" (501 N.Y.S.2d at pp. 916–17).

The Petitioner sought leave to appeal to the New York Court of Appeals, which was denied (*People v. Pabon*, 68 N.Y.2d 1003, 1003, 503 N.E.2d 133, 133, 510 N.Y.S.2d 1036, 1036 [1986]).

## DISCUSSION

### A. *Jurisdiction*

28 U.S.C. § 2254(a) provides, in pertinent part, that a

"district court shall entertain an applica-

tion for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

The instant petition, is based on two alleged Constitutional violations:

"Petitioner was deprived of his fifth and sixth amendment rights by the trial court's refusal to suppress his involuntarily given oral and videotaped statement, [and]

Petitioner was deprived of due process under the fourteenth amendment when he received a substantially more severe sentence as judicial retribution for the exercise of his right to a jury trial" (*Pabon v. Hake*, Petition for Writ of Habeas Corpus, CV–89–2182, at p. 7)

Since the basis for the instant petition was "presented to the highest court" of New York State, the Petitioner exhausted his state remedies and this Court can entertain the Petition (see *Pesina v. Johnson*, 913 F.2d 53, 54 [2d Cir.1990]).

### B. *Admission into Evidence of Petitioner's Statements*

The propriety of obtaining a statement in close proximity to an improper act by police was addressed by the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). There, an illegal search of the defendant's residence resulted in finding evidence connecting the defendant with a murder for which the defendant was subsequently arrested. The defendant thereafter gave two confessions after separate *Miranda* warnings were administered (*id.* at pp. 591–96, 95 S.Ct. at 2255–58). The Court determined that the illegal arrest "tainted" the confessions obtained by the police, thereby constituting a coerced statement, and held that a *Miranda* warning, by itself, is insufficient to eliminate the taint of coerced statement (*id.* at p. 605, 95 S.Ct. at p. 2262). In holding that the *Miranda* warnings did not remove the "taint", consideration was given to the proximity in time between the arrest and

confession, the presence of intervening circumstances and the misconduct of officials (*id.* at pp. 603–04, 95 S.Ct. at pp. 2261–62).

A person who makes a statement to the police prior to a *Miranda* warning is not, however, "disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings" (*Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 1298, 84 L.Ed.2d 222 [1985]). The Supreme Court in *Elstad* reviewed a case where an 18–year–old burglary suspect made the statement "I was there" prior to receiving a *Miranda* warning, and approximately one hour later made a full statement, after receiving a *Miranda* warning, describing his involvement (*id.* at pp. 301–02, 105 S.Ct. at pp. 1288–89). The Court, reasoning that the purpose underlying the Fifth Amendment is to prevent coerced testimony (*id.* at pp. 306–07, 105 S.Ct. at pp. 1291–92), held that a statement made prior to a *Miranda* warning is not automatically the equivalent to a coerced statement and courts must avoid a rigid rule requiring a finding of coercion when "the suspect's initial inculpatory statement, though technically in violation of *Miranda,* was voluntary" (*id.* at p. 318, 105 S.Ct. at p. 1297; *see also United States v. Wauneka*, 770 F.2d 1434, 1440 [9th Cir.1985] ["the court must suppress the evidence unless the violation was sufficiently attenuated to permit the use of the evidence under the standards announced in *Brown.* If, on the other hand, the prior statement was voluntary in the sense that it was not coerced in violation of the fifth amendment, though obtained in technical violation of the *Miranda* requirements, the court should suppress the statement given after the *Miranda* warning only if the court finds that the subsequent statement was not voluntarily made"]).

 Applying the rule in *Elstad,* Statements # 2 and # 3 were properly admitted into evidence if Statements # 1, # 2 and # 3 were voluntary. In determining whether a statement is voluntarily made, the Court must consider all of the facts and circumstances surrounding the statement (*United States v. Anderson*, 929 F.2d 96,

99 [2d Cir.1991] ). According to the Second Circuit, this totality of circumstances test to determine whether an accused's confession is voluntary involves three sets of circumstances: "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials" (*Green v. Scully,* 850 F.2d 894, 901 [2d Cir.], *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 [1988] ). The pertinent characteristics of the accused include experience, background, age and education or intelligence. (*Id.* at p. 902)

■ Reviewing the record, the Court finds that Statements # 1, # 2 and # 3 were voluntarily made. The Petitioner resided in Astoria with his wife and three children, and worked as a glazier full-time and as a sanitation worker part-time. He speaks English. Statement # 1 was made to Officer Barnett in the Petitioner's residence. At the time, the police did not have their weapons drawn, did not forcibly enter the premises and did not handcuff the Petitioner. In addition, the trial court found and the record confirms that the Petitioner expressed the desire to speak with the police about the car. These factors lead this Court to believe that the Petitioner understood what he was doing when speaking with the police and that he knew the consequences of his actions. As a result, Statement # 1 was voluntary and not coerced, although it was inadmissible for lack of a *Miranda* warning.

■ As to Statement # 2, the Petitioner was read his *Miranda* rights prior to making the statement. However the New York Appellate Division deemed the admission of the statement at trial improper, because there was no "pronounced break in the questioning that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (*People v. Pabon, supra,* 501 N.Y. S.2d at p. 917). Nevertheless, this Court finds that the statement was voluntary and not coerced. In addition to the Petitioner's own ability to communicate and understand what was happening around him, the record clearly indicates that the Petitioner himself expressed the desire to speak about the events of the prior evening.

■ As to Statement # 3, the Petitioner was informed of his *Miranda* rights prior to the statement. Further, Statement # 3 occurred over eight hours after Statement # 2 and was taken by a different person. While the Petitioner "let the cat out of the bag" in Statement # 2, this is only "one factor bearing on the disputed issue of voluntariness of the later, fully advised statement" (*Tanner v. Vincent,* 541 F.2d 932, 937 [2d Cir.1976], *cert. denied,* 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 782 [1977] ). As with Statement # 2, the Petitioner clearly expressed his desire to make the videotaped statement.

■ In sum, the Court finds that Statements # 1, # 2 and # 3 were voluntary and, pursuant to the rule in *Elstad,* the admission of Statements # 2 and # 3 did not violate the Fifth or Sixth Amendment.

### C. *Petitioner's Sentence*

■ The Petitioner argues that the maximum sentence was imposed as retribution for proceeding to trial. In determining whether a sentence was imposed as a form of judicial retribution, the Court starts with the concept that trial by jury is a right given to persons under the United States Constitution (Amend. VI), and a state may not penalize a person for exercising a right guaranteed under the Constitution (*North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 [1969] ). However, a presumption of vindictiveness applies to a sentence only when there is a "realistic motive for [the] vindictive sentencing" (*Texas v. McCullough,* 475 U.S. 134, 139, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 [1986] ). When a presumption of vindictiveness does not apply, the Petitioner has the burden of proving vindictiveness by a preponderance of the evidence (*Alabama v. Smith,* 490 U.S. 794, 799–800, 109 S.Ct. 2201, 2204–05, 104 L.Ed.2d 865 [1989] ).

■ The only evidence the Petitioner cites in support of his claim of vindictive sentencing was that, after trial, he received a sentence exceeding the promised sen-

tence he rejected as part of the proposed plea agreement. In *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976), it was held that "lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial" (quoting *United States v. Thompson*, 476 F.2d 1196, 1201 [7th Cir.], *cert. denied*, 414 U.S. 918, 94 S.Ct. 214, 38 L.Ed.2d 154 [1973] ). Under *Araujo*, the fact that an offered sentence during plea negotiation is less than the maximum potential sentence does not mean that the judge acted vindictively (*see Shu v. Wilmot*, 1985 WL 2034, *3 [S.D. N.Y. July 15, 1985] [court held that "[t]he fact that the sentence imposed after trial is significantly greater than the one contained in a plea offer ... does not alone suggest vindictiveness"] ). Moreover, there is no support in the record that Justice Leahy even considered the prior plea bargain arrangement when sentencing the Petitioner. Indeed, there was no statement by the sentencing Justice indicating any vindictiveness as a result of the Petitioner choosing to go to trial. Accordingly, the court finds that the Petitioner has failed to show by a preponderance of the evidence that his sentence was unconstitutionally vindictive.

The Petitioner also claims that his sentence was imposed as a result of the trial Justice's erroneous conclusion that the Petitioner was the mastermind behind the robbery and therefore did not deserve special treatment, in violation of the Fourteenth Amendment.

The trial Justice sentenced the Petitioner within the permissible statutory range (*see* N.Y.Penal Law § 70.00). Writing for the Second Circuit in *United States v. Gelb*, No. 90–1396, slip op. at p. 2385 (2d Cir. Mar. 5, 1991), Judge Pratt stated that a sentence will not be set aside if it is within the legal limits and not based upon "materially inaccurate or otherwise improper information" (quoting *United States v. DiPaolo*, 804 F.2d 225, 234 [2d Cir.1986] ).

For example, the material misinformation in *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), concerned the judge's reliance during sentencing on the defendant's prior criminal record, later shown to have numerous inaccuracies. The Supreme Court concluded that these materially untrue assumptions adversely affected the defendant's sentence. In *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), improper reliance upon an unconstitutional conviction was considered material. In *McGee v. United States*, 462 F.2d 243 (2d Cir.1972), the potential influence of an invalid count on the sentence imposed for the remaining valid counts was deemed material. And in *United States v. Malcolm*, 432 F.2d 809, 818 (2d Cir.1970), the failure of the sentencing judge to permit the prosecutor or defense attorney to elaborate upon circumstances mitigating the sentence was held to be material.

■ The alleged material misinformation in this case—the Petitioner's role in the crime—does not rise to the level of materiality enunciated in the precedents. Moreover, Justice Leahy's statement at sentencing was not "materially inaccurate" when viewed in the light of the evidence introduced at the trial.

■ Upon a searching review of the record, the Court determines that support for the statement made by Justice Leahy may be inferred from various portions of the evidence. There was evidence introduced at the trial that the attempted robbery was planned in advance. Several witnesses testified that a car and driver were waiting in a manner consistent with the desire to make a quick escape. Off-duty Police Officer John Oliver, an eyewitness to the murder, testified that he observed the passenger door open in the car used in the robbery and he saw the driver of the car holding the passenger seat forward (Tr. at p. 86). He observed the first accomplice to reach the car dive into the back seat and the second accomplice sit in the front seat prior to the car speeding away from the scene (Tr. at pp. 86–87). Police officer

Oliver also observed that the car was parked approximately 15 to 20 feet east of the service station (Tr. at pp. 97–98). The trial Justice could reasonably infer from this evidence that the Petitioner purposefully stayed a distance from the gas station to avoid identification.

Denis Curtin, another eyewitness, testified that he observed the car used in the robbery "idling" on the street away from the service station (Tr. at p. 224). The car then came to a "screeching stop" in front of the service station followed by the driver reaching over to open the passenger door and tilting the passenger seat forward (Tr. at p. 226). Curtin also observed the first accomplice leap into the back seat and the second accomplice enter the front seat prior to the car leaving the scene (Tr. at p. 230).

In addition, the testimony revealed that only the Petitioner lived in and was familiar with the immediate surrounding area. Arresting Officer Clifford Barnett testified that the alleged accomplices were not residents of the Borough of Queens. Rivera lived in the Bronx and Roman lived in Manhattan (Tr. at p. 155). The Petitioner testified at the trial that both Rivera and Roman recently arrived in the United States from Puerto Rico and neither spoke English (Tr. at p. 286). The Petitioner also testified that he lived in Astoria all of his life (Tr. at p. 285), and that, inexplicably, he did not stop for gas at two stations closer to his home than the Mobil station (Tr. at pp. 289 and 299–300). The trial Justice could reasonably infer from these facts that the Petitioner purposefully chose a station further from his home to avoid recognition, a tactic his two co-defendants could not reasonably formulate, given their unfamiliarity with the neighborhood and their inability to speak English.

A potential motive for the Petitioner's involvement in the robbery was exhibited on cross examination when the Petitioner revealed that he had a heroin habit of $30 per day, his wife had a heroin habit of approximately $15–20 per day and that he earned only approximately $250 per week (Tr. at pp. 287–88).

Taken together, the above summarized evidence supports Justice Leahy's statement at sentencing, which in this Court's view, was not materially inaccurate (*United States v. Gelb, supra*). Since the sentence was within the legal limits, there is no evidence of vindictiveness on the part of Justice Leahy and he did not rely on any materially inaccurate information, the Court finds that the sentence was not unconstitutionally vindictive.

## CONCLUSION

For the foregoing reasons, the instant Petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.