UNITED STATES of America

v.

Jean M. TAYLOR, Defendant.

Crim. A. No. 91–00056–B–02.

United States District Court, D. Maine.

Sept. 27, 1991.

---

See also 774 F.Supp. 41.

Timothy D. Wing, Asst. U.S. Atty., Bangor, Me., for U.S.

J. Hilary Billings, Bangor, Me., for Jean Taylor.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

This matter is before the Court on defendant Jean Taylor's motion to suppress incriminating statements she made to two law enforcement officers. A hearing on the motion was held on September 20, 1991. For the reasons stated below, defendant's motion is DENIED.

On July 17, 1991, the Bureau of Intergovernmental Drug Enforcement ("BIDE") sought and obtained a search warrant for Jean Taylor's mobile home. BIDE executed the search warrant, finding a large number of marijuana plants and assorted drug paraphernalia. During the course of BIDE's search, Special Agent Robert Hutchings arrested and handcuffed Jean Taylor, placing her in an unmarked police car. Hutchings never advised Jean Taylor of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Over an hour later, after BIDE concluded its search, Hutchings transported Jean Taylor to the Penobscot County Jail. While en route, Jean Taylor asked Hutchings "why she was in the position [in] which she found herself." Hutchings responded that "she can't be growing dope." Jean Taylor made the following statements during the ensuing colloquy which Hutchings recorded:

a. If you had come next week all the males would have been pulled. You always pull the males early;

b. I smoke dope for my hiatal hernia;

c. I don't sell it, that's why I grow it so I don't have to buy it; and

d. I am shy, I don't like people, they always try to take advantage of me.

After Jean Taylor was booked at the Penobscot County Jail, she is also alleged to have said, in substance, that "if [BIDE] had waited a day or two she would have gotten rid of all the plants that produce and she wouldn't be in here." Penobscot County Deputy Sheriff Hilda Mason overheard the remark and recorded it in a report filed at the end of her shift.

Jean Taylor now seeks to suppress the statements she made, asserting that the statements were the product of "calculated prodding." The Court must determine whether the remarks were voluntary ad-

missions or responses to police questioning amounting to custodial interrogation. The Supreme Court has held that:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.... But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980) (emphasis in the original).

■ The Court concludes that Jean Taylor's remarks to Special Agent Hutchings and Deputy Mason were voluntary statements which are admissible. *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630. First, Jean Taylor's remark to Deputy Mason was unquestionably a voluntary utterance. The evidence demonstrated that Deputy Mason was neither questioning nor conversing with Taylor when she made the incriminating statement. There is simply no indication that Taylor's comment was anything other than spontaneous.

■ Nor were Taylor's statements to Hutchings the product of express questioning or its functional equivalent. Taylor initiated the exchange and selected the topic of conversation when she asked, in essence, why she had been arrested. Hutchings' remark—"you can't be growing dope"—is an obvious, straightforward and reasonable response. The record is devoid of evidence indicating that Hutchings intended or should have known that his answer to the defendant's question would be reasonably likely to elicit an incriminating response. Certainly, Hutchings did not ha-

rangue or lecture Taylor on the evils of cultivating marijuana. *See, e.g., Rhode Island v. Innis*, 446 U.S. at 303, 100 S.Ct. at 1691. Nor was his statement particularly "evocative." *See, e.g., id.* Furthermore, the length of time which Taylor was held in the police car is irrelevant since " '[i]nterrogation,' as conceptualized in the *Miranda* opinion must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* 446 U.S. at 300, 100 S.Ct. at 1689. Unable to establish that Special Agent Hutchings or Deputy Mason were engaged in express questioning or its functional equivalent, the defendant, in effect, is asking the Court to create a rule prohibiting the police from answering questions from suspects about why they have been arrested or with what crime they will be charged. *Rhode Island v. Innis*, however, does not require that the police remain silent, only that they refrain from interrogating a suspect in custody who either has invoked or has not been informed of his or her *Miranda* rights.

Under all the circumstances, Jean Taylor's statements amount to voluntary admissions. Because "[c]onfessions remain a proper element in law enforcement [and] [a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence," *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, suppression of Taylor's spontaneous remarks is unwarranted.

SO ORDERED.