873 P.2d 280

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Chris VARGAS, Defendant–Appellant.**

**No. 14319.**

Court of Appeals of New Mexico.

March 11, 1994.

Certiorari Denied April 15, 1994.

---

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

Defendant appeals his convictions for second-degree murder and tampering with evidence. He asserts four grounds for reversal of his convictions: (1) the admission into evidence of his confession to Detective Barbara Cantwell; (2) the seizure of four newspaper clippings and a letter during the search of his home, and the admission into evidence of three of the clippings; (3) the failure of the district court to grant him sufficient time for scientific analysis of the automobile in which the victim was shot; and (4) prosecutorial misconduct during trial. We affirm.

## I. BACKGROUND

Tony Lopez was killed by a shot to the head on September 7, 1991, while sitting in the driver's seat of his automobile in the parking lot of a 7–11 convenience store in Albuquerque. Lopez had driven into the parking lot shortly after Defendant had arrived in a car driven by David Vigil. Vigil's other passengers were his girlfriend, Defendant's girlfriend, and Daniel Gallegos. Defendant and Vigil were in the store when Gallegos came in to tell them that the person who had "messed up your car" was in the parking lot. Gallegos had recognized Lopez

as one of the people who had attacked Defendant, Vigil, and Gallegos two months earlier in an incident that had resulted in extensive damage to some automobiles and injuries to Vigil severe enough to require hospitalization. When Defendant came out to the parking lot, he too recognized Lopez as one of the people involved in the earlier fight. Gallegos approached Lopez's vehicle and began pounding on a window while yelling at Lopez. Within seconds Lopez began to back up the vehicle. Defendant fired his gun. Defendant, who admitted firing a shot, testified that he thought a passenger in the back seat was reaching for a gun. The passenger was not injured but Lopez was killed. The gun was never recovered. Defendant testified that he had sold the gun.

We will recite other facts in the discussions of the particular issues to which they relate.

## II. DEFENDANT'S CONFESSION

■ On September 16, 1991, Defendant voluntarily went to the police station to ask whether there was a warrant for his arrest. He was curious because he knew that Gallegos had been arrested five days earlier. He was told that there was no warrant but that officers wanted to question him. After Defendant invoked his right to remain silent, he was arrested. On the way to booking, while Detective Cantwell was walking Defendant from the police station to the jail across the street, she told him "that it looked good for him that he turned himself in." Defendant responded, "I didn't mean to shoot him." When Cantwell then asked "What?", he repeated his statement. Cantwell testified that prior to Defendant's confession her only questioning related to information needed for booking, such as with whom he was living.

The State concedes that it would have been improper for Cantwell to engage in any interrogation of Defendant other than that "'normally attendant to arrest and custody.'" *State v. Edwards*, 97 N.M. 141, 144, 637 P.2d 572, 575 (Ct.App.) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981). The issue is whether Cantwell's statement to Defendant although not express questioning

was its "functional equivalent" and therefore constituted interrogation. *See id.* Interrogation includes "'words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.'" *Id.* (quoting *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689).

We hold that Cantwell's statement did not constitute interrogation. It was not a statement that she should have expected to exert such emotional pressure on Defendant as to evoke an incriminating response. *See Innis* (defendant told officers where he had put a sawed-off shotgun after he heard officers' police-car conversation regarding danger to children posed by the shotgun; statement admissible). We affirm the ruling of the district court.

## III. NEWSPAPER CLIPPINGS AND LETTER

Three newspaper clippings admitted into evidence at trial were seized during a search of Defendant's home pursuant to a warrant. Headlines from all three clippings related to the shooting at the 7–11.

Defendant does not challenge the validity of the search warrant. His claim is that seizure of the clippings was unlawful because the warrant did not authorize the seizure. The warrant authorized seizure only of clothes worn on the night of the robbery, guns, ammunition, and receipts or bags from the 7–11 store where the shooting occurred.

■ The validity of the seizure of the clippings depends upon whether the seizure was permissible under the "plain view" doctrine. The doctrine allows the warrantless seizure of an item if (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the item's "incriminating character [was] 'immediately apparent'"; and (3) the officer had "a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *see Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *State v. Luna*, 93 N.M. 773, 779, 606 P.2d 183, 189 (1980).

■ The heart of Defendant's argument is his contention that "[i]f items must be moved or read to establish their evidentiary value, they cannot be said to be evidence properly seized 'in plain view.'" Although there is a core of truth in Defendant's contention, it is not fully accurate, and the inaccuracy makes all the difference to the result here.

First, there is nothing wrong with an officer's moving an object in the course of execution of a search warrant if such movement is in furtherance of the search for items enumerated in the warrant. Here, the clippings were on the top shelf of the bedroom closet, covered by a drawing. The warrant authorized the seizure of receipts from the 7–11. The officers executing the warrant could properly look through the papers to see if there were any seizable receipts. *See United States v. Barnes,* 909 F.2d 1059, 1070 (7th Cir.1990) (search of spiral notebook for cocaine); *United States v. Yu,* 755 F.Supp. 578, 581–82 (S.D.N.Y.1991) (gun registration certificate seized during search pursuant to warrant for documents relating to wire fraud); *State v. Apelt,* 176 Ariz. 349, 861 P.2d 634, 647–48 (1993) (en banc) (business cards seized while searching for receipts, utility bills, and airline tickets); *cf. United States v. Silva,* 714 F.Supp. 693 (S.D.N.Y.1989) (improper for agent to leaf through notebook page by page).

Second, the incriminating character of an object may be "immediately apparent" even though the incriminating character derives from writing on the object—that is, even though establishing the object's evidentiary value requires reading. The question is how much reading is required. When the words that convey the incriminating message are so visible to the casual eye that it would require a conscious effort not to absorb the message, the incriminating character is undoubtedly "immediately apparent." That was the case here. Each of the clippings contained a sizeable headline concerning the killing at the 7–11. Anyone who picked up one of the clippings and glanced at it would realize that its presence in Defendant's home corroborated his involvement with the killing. Courts have regularly applied the plain view doctrine to written materials. *See United States*

*v. Giannetta,* 909 F.2d 571, 577–79 (1st Cir. 1990) (banking documents), *United States v. Berkowitz,* 927 F.2d 1376, 1388–89 (7th Cir. 1991) (file stolen from office of United States Attorney; agent recognized his own handwriting on some files), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), and —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); *Barnes,* 909 F.2d at 1070 (spiral notebook containing business notations); *Yu,* 755 F.Supp. at 581–82 (gun registration certificates); *Apelt,* 861 P.2d at 647–48 (business cards); *cf. Joseph v. State,* 807 S.W.2d 303, 308 (Tex.Crim.App.1991) (en banc) (improper to read contents of greeting card that was not incriminating on its face). Indeed, this Court has previously upheld the seizure of written material under the plain view doctrine. *State v. Dobbs,* 100 N.M. 60, 65–67, 665 P.2d 1151, 1156–58 (Ct.App.) (notations on open page of city directory and list of names on handwritten sheets), *cert. quashed,* 100 N.M. 53, 665 P.2d 809 (1983). We affirm the district court's ruling that seizure of the clippings was lawful.

■ Defendant also complains about the seizure of a fourth newspaper clipping, which related to the murder rate in Albuquerque in general, and a letter written by Defendant. Neither of these documents was admitted into evidence at trial. Although Defendant does not suggest any prejudice resulting from the seizure of the fourth clipping, he contends that his trial strategy was affected by the letter. He asserts that because he believed that the letter would be admitted at trial, "his counsel was forced to admit some gang involvement of [Defendant] and discuss Lopez's involvement in gangs, as a part of his trial strategy." He also suggests that defense counsel may have advised Defendant not to testify at trial if he had known that the letter would be excluded. This argument perplexes us, however, because Defendant admits that prior to trial the State indicated that it would not seek to introduce the letter, except perhaps for impeachment of Defendant. Defendant has not established any prejudice arising from the seizure of the letter. Thus, any error in the seizure was harmless.

Finally, Defendant contends that the three clippings relating to the 7–11 killing were inadmissible at trial even if they had been properly seized. He contends that they were irrelevant because "they did not go to any contested issue at trial." We disagree. The clippings satisfied the definition of relevance in our rules of evidence. SCRA 1986, 11–401. They were probative of Defendant's involvement in the events at the 7–11. We find no abuse of discretion in the district court's decision to admit the evidence.

## IV. INSPECTION OF VICTIM'S AUTOMOBILE

Defendant sought to examine the automobile in which Lopez was shot, primarily to determine whether a second shot may have been fired. Evidence of a second shot would generate doubt that Defendant's shot was the one that killed Lopez.

Defendant filed a motion that the State be ordered to allow access to Lopez's automobile for an independent examination. The State responded that the vehicle was private property which was not in the custody or control of the district attorney or any law enforcement agency. At a hearing on March 31, 1992, the district court found that the vehicle was not in the control of the State and denied the motion. The district court then noted that defense counsel was free to issue a subpoena duces tecum for the vehicle.

On August 6, 1992, the second day of trial, the district court conducted a hearing on a motion in limine filed by Defendant seeking to bar testimony of the prosecution witness who had examined the vehicle. Defendant contended that he had been prevented from having an independent examination conducted. Evidence at the hearing showed, however, that Defendant had never obtained a subpoena duces tecum for the vehicle. The district court ordered that the vehicle be made available for inspection by Defendant.

The following day Defendant proffered evidence that it would take thirty days to obtain test results on material from the vehicle. Defendant moved for a mistrial or a thirty-day continuance of the trial. The district court denied the motion. We find no error.

Defendant relies on various appellate decisions that recognize the obligation of the State to preserve and produce evidence relevant to the defense. *See, e.g., Mathis v. State*, 112 N.M. 744, 746, 819 P.2d 1302, 1304 (1991); *State v. Sandoval*, 99 N.M. 173, 175, 655 P.2d 1017, 1019 (1982). These decisions are inapposite. The State did not destroy any evidence, lose any evidence, or fail to disclose or produce evidence under its control. The evidence here (the victim's automobile) was preserved by private parties and was available to Defendant through legal process. The only problem was that Defendant delayed in obtaining legal process necessary to compel production of the automobile by its owners. Any prejudice to Defendant was the result of this delay. There was no abuse of discretion in denying relief to Defendant. *See State v. Smith*, 92 N.M. 533, 537, 591 P.2d 664, 668 (1979) (denial of continuance is reviewed for abuse of discretion).

## V. PROSECUTORIAL MISCONDUCT

We have reviewed Defendant's allegations of prosecutorial misconduct in the questioning of witnesses, closing argument, and statements at the sentencing hearing. We find no reversible error. In particular, we fail to see any impropriety in the prosecutor's use of the word "murder" while conducting a prosecution for second-degree murder.

## VI. CONCLUSION

For the above reasons we affirm the judgment of the district court.

IT IS SO ORDERED.

APODACA and PICKARD, JJ., concur.