903 P.2d 241

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Benny Adon JUAREZ, Defendant–
Appellant.**

**No. 15416.**

Court of Appeals of New Mexico.

July 5, 1995.

Certiorari Denied Aug. 14, 1995.

Tom Udall, Attorney General and William McEuen, Ass't Attorney General, Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Christopher Bulman, Ass't Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BOSSON, Judge.

Defendant appeals his conviction for receiving stolen property after a conditional guilty plea. We analyze the following questions: (1) where there are incriminating statements both before and after *Miranda* warnings are administered, whether the post-*Miranda* statements are still admissible; and (2) where the trial court errs in denying a motion to suppress pre-*Miranda* statements, whether Defendant's conviction from a plea agreement can still stand. We affirm in part, reverse in part, and remand for new proceedings consistent with this opinion.

## FACTS

On October 9, 1993, Carlsbad Police Officer Gerald Holguin arrested Defendant at his girlfriend's residence on a municipal bench warrant for failure to pay a fine. Prior to the arrest, another police officer had informed Officer Holguin that Defendant was one of two suspects in a recent aggravated assault and that he might have a gun. *Miranda* warnings were not administered to Defendant at the time of his arrest. Defendant was handcuffed and transported back to the police station in a police car.

During the five-minute drive to the police station, while talking with Officer Holguin, Defendant volunteered information to the effect that he wished he had gone back to Roswell instead of remaining in Carlsbad and added that his bag was packed and sitting near the front door of his girlfriend's house. Officer Holguin asked if the bag belonged to Defendant, and Defendant confirmed that it did. Officer Holguin then asked Defendant for permission to search the bag. Defendant asked "What for?" Officer Holguin replied that the police were looking for a gun believed to be used by Defendant and another suspect in a recent aggravated assault. Defendant consented to a search, and Officer Holguin dispatched another officer to retrieve the bag.

Once at the police station, the booking process began. While Defendant was handcuffed to a table, Officer Holguin asked him routine booking questions. During this process, Defendant asked Officer Holguin what type of gun the police were looking for and why they wanted to talk with the other suspect. Officer Holguin did not respond, allegedly to "protect the integrity of the investigation." After a few minutes, Defendant stated: "I have a gun. It's not in my possession, but it's in my bag." Officer Holguin immediately read Defendant his *Miranda* rights, which Defendant acknowledged. Officer Holguin then questioned Defendant about the gun. Defendant again indicated the gun was probably in his bag, and this time he also admitted stealing the gun. Defendant again gave consent to a police search of the bag.

The bag was brought to the police station shortly thereafter, and the officers searched the bag with Defendant's help. No gun was found. Defendant thought his girlfriend might have taken the gun out of the bag, and at the officers' request Defendant called his girlfriend and told her to turn the gun over to the police. She complied. The police verified that the gun had been stolen in Roswell. Defendant again admitted stealing the gun.

Defendant was charged with receiving stolen property. Based on the lack of timely *Miranda* warnings, Defendant filed a motion to suppress all statements and evidence obtained after his initial arrest at his girlfriend's residence. The trial court denied the motion, finding that: (1) there was no interrogation prior to Officer Holguin advis-

ing Defendant of his *Miranda* rights at the police station; and (2) Defendant knowingly waived his right against self-incrimination by virtue of his post-*Miranda* confession. Upon the denial of his motion to suppress, Defendant entered a conditional plea of guilty reserving the right to appeal his unsuccessful motion to suppress and to challenge the sufficiency of the evidence. *See State v. Hodge,* 118 N.M. 410, 882 P.2d 1 (1994) (approving use of conditional plea agreement).

DISCUSSION

■ In an appeal of a suppression motion the appropriate standard of review is whether the trial court correctly applied the law to the facts viewed in the manner most favorable to the prevailing party. *State v. Boeglin,* 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983). We draw all reasonable inferences in support of the court's decision and disregard all inferences or evidence to the contrary. *Id.* "A reviewing court is not, however, bound by a trial court's ruling when predicated upon a mistake of law." *Id.* Thus, there is a distinction between factual determinations which are subject to a substantial evidence standard of review and application of the law to the facts which is subject to de novo review. *See State v. Attaway,* 117 N.M. 141, 145, 870 P.2d 103, 107 (1994); *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). As noted in *Attaway,* a de novo standard of review is appropriate for threshold constitutional questions, such as the voluntariness of confessions and the validity of search warrants. In the present case, de novo review is the appropriate standard. *See State v. Franks,* 119 N.M. 174, 178, 889 P.2d 209, 213 (Ct.App.1994) (applying de novo review to voluntariness of confession).

Police Questioning Constituted Custodial Interrogation

■ Our initial inquiry is whether Defendant was interrogated prior to being advised of his *Miranda* rights at the police station. *Miranda* warnings are required only when a defendant is in a custodial situation and under interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980);

*Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Whether a person is interrogated depends on the facts and circumstances of each case. *See, e.g., State v. Blackshire,* 10 Haw.App. 123, 861 P.2d 736, 741 (1993). Interrogation is not limited to express questioning. It can include other, less-assertive police methods that are reasonably likely to lead to incriminating information, but which are beyond those normally attendant to arrest and custody. *See Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–90 (requiring *Miranda* warnings when person in custody is subjected to express questioning or its functional equivalent); *State v. Ybarra,* 111 N.M. 234, 238, 804 P.2d 1053, 1057 (1990) (questioning accused in stressful atmosphere of hospital emergency room constituted interrogation); *State v. Edwards,* 97 N.M. 141, 143–44, 637 P.2d 572, 574–75 (Ct.App.) (same), *cert. denied,* 97 N.M. 621, 642 P.2d 607 (1981); *cf. State ·v. Pisio,* 119 N.M. 252, 257, 889 P.2d 860, 865 (Ct.App.1994) (federal constitution does not preclude use of incriminating statements against accused if "volunteered"), *cert. denied,* 119 N.M. 20, 888 P.2d 466 (1995).

■ In the present case, Defendant contends that he was subjected to custodial interrogation prior to being read his *Miranda* rights, and we agree. Specifically, we conclude that Defendant was first interrogated while in the police car en route to the police station. Defendant was entitled to *Miranda* warnings at the time Officer Holguin informed him that the police were looking for a weapon believed to be used by Defendant in a recent aggravated assault. Although Officer Holguin may have been only responding to Defendant's inquiry regarding the reason for the search of his bag, it is not the officer's intent that determines whether a suspect is being interrogated. *See, e.g., State ex rel. LaSota v. Corcoran,* 119 Ariz. 573, 583 P.2d 229, 235–36 (1978) (en banc) (questioning may be considered interrogation even though asked reflexively without any actual intent to elicit damaging evidence). The determinative factor is whether the officer should have known that his statements were reasonably likely to elicit an incriminating response from

the suspect. *Innis*, 446 U.S. at 303, 100 S.Ct. at 1691.

We note Officer Holguin's acknowledgment that at the time of Defendant's confession at the police station, "[T]he tension, I guess, was building in his mind." It is reasonable to conclude that the tension began building while Defendant was handcuffed in the police car, being transported to the police station, and told that he was a suspect in another, more serious crime. At that point, it was reasonably foreseeable that Defendant might feel compelled to make an incriminating statement, as he eventually did during the booking process. That very remark during booking was directly connected to the earlier conversation in the police car about the bag and the gun.

Although Defendant initiated the conversation in the police car, Officer Holguin intentionally focused the conversation on the bag and the second crime. Thus, this is not a situation where an officer responds reflexively to a suspect's unanticipated remark. *See Andersen v. Thieret*, 903 F.2d 526, 531–32 (7th Cir.1990) (while in custody, defendant stated, "I stabbed her." Officer said, "Who?"); *see also People v. Levendoski*, 100 Ill.App.3d 755, 55 Ill.Dec. 867, 869–70, 426 N.E.2d 1241, 1243–44 (1981) (while *Miranda* does not require police to interrupt voluntary statement, self-incrimination reasonably expected when detective knew defendant wanted to talk and proceeded to elicit information); *cf. United States v. Lynch*, 813 F.Supp. 911, 916 (D.N.H.1993) (although defendant initiated conversation leading to incriminating statement, it was interrogation nonetheless).

In the same vein, we note the difference between the facts of this case and those in *State v. Vargas*, 117 N.M. 534, 873 P.2d 280 (Ct.App.), *cert. denied*, 117 N.M. 524, 873 P.2d 270 (1994). In *Vargas*, on the way to booking a detective told the defendant "that it looked good for him that he turned himself in." The defendant responded, "I didn't mean to shoot him." This Court correctly held that the detective's isolated remark did not constitute either interrogation or its functional equivalent. Instead, the Court characterized it as a general statement not specifically directed at eliciting a response, and certainly not the response that actually followed. In addition, the detective's remark was not made in a situation where the person under arrest was also a suspect in an ongoing investigation of another, more serious crime. Thus, the officer's remark in *Vargas* was not reasonably "expected to exert such emotional pressure on [the] [d]efendant as to evoke an incriminating response." *Id.* at 536, 873 P.2d at 282.

In our case, on the other hand, even before Officer Holguin talked with Defendant, he knew Defendant was a suspect in another crime and that the police were looking for a gun. When Defendant volunteered information about the bag, it was only natural that Officer Holguin would suspect the bag might contain evidence about the assault, and Officer Holguin acknowledged this very suspicion during testimony at the preliminary hearing. When Officer Holguin responded to Defendant's remarks about the bag, the officer was investigating the second crime, not the minor offense for which Defendant was under arrest. Under these circumstances, Officer Holguin knew or should have known that almost anything Defendant said in response would tend to be incriminating. Even Defendant's admission to owning the bag, given in response to a direct question from Officer Holguin, would necessarily link Defendant to any incriminating evidence found in the bag, and particularly the very gun the police were looking for. *See United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir.) (questioning about routine biographical information designed to elicit incriminating responses constituted interrogation subject to *Miranda* rights), *cert. denied*, —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993); *United States v. Henley*, 984 F.2d 1040, 1042–43 (9th Cir.1993) (interrogation based on obtaining admission about car's ownership where officer had reason to believe car was involved in illegal activity and car would contain incriminating evidence); *Blackshire*, 861 P.2d at 742 (conversation and general on-the-scene questioning ends and interrogation begins when police request information designed to elicit, or reasonably likely to elicit, incriminating response).

**504**

Parenthetically, we acknowledge that a request for consent to search is not, by itself, an interrogation, just as a consent to search is not an incriminating response. *See State v. Blakely,* 115 N.M. 466, 469, 853 P.2d 168, 171 (Ct.App.) ("The fact that Defendant was being taken into custody does not preclude a valid consent to a search."), *cert. denied,* 115 N.M. 535, 854 P.2d 362 (1993); *see also United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1568 (10th Cir.1993) (requesting consent to search not interrogation; granting consent not incriminating statement); *United States v. Glenna,* 878 F.2d 967, 971 (7th Cir.1989); *Cody v. Solem,* 755 F.2d 1323, 1330 (8th Cir.), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985). In this case, however, in addition to requesting consent to search, Officer Holguin also asked Defendant whether he owned the very bag that Officer Holguin suspected might contain the incriminating gun. Thus, Officer Holguin did more than obtain a consent to search. *See, e.g., United States v. Smith,* 3 F.3d 1088, 1098 (7th Cir.1993) ("Where the question goes beyond a request for consent and inquires as to ownership of that which is searched, the inquiry crosses the threshold into testimonial incrimination and is therefore barred unless the safeguards of *Miranda* have been put in place."), *cert. denied,* —— U.S. ——, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994). We need not decide whether Defendant's initial consent to search the bag was influenced by any pre-*Miranda* violation and therefore invalid. After being read his *Miranda* rights, Defendant consented to the search. The gun was eventually obtained as a result of Defendant's post-*Miranda* consent and cooperation and is therefore admissible into evidence.

We note, as well, that this case is unlike those in which an officer merely informs a suspect of the charges against him, an act which is not normally considered interrogation. Officer Holguin's statement to Defendant that he was a suspect in a recent aggravated assault went beyond those remarks normally attendant to arrest and custody. *Cf. United States v. Taylor,* 774 F.Supp. 44 (D.Me.1991); *State v. Leak,* 90 N.C.App. 351, 368 S.E.2d 430, 433 (1988) (statement telling

defendant nature of charges against him not interrogation).

### Post–*Miranda* Statements Need Not be Suppressed

Our inquiry, however, does not end with the suppression of Defendant's pre-*Miranda* statements. Defendant argues that *State v. Bedolla,* 111 N.M. 448, 453–56, 806 P.2d 588, 593–96 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991), requires suppression of all post-*Miranda* statements, as the fruit of the poisonous tree, because of insufficient attenuation between the pre- and post-*Miranda* statements. However, *Bedolla* involved a Fourth Amendment violation, and the present case involves only a Fifth Amendment violation. As discussed below, a Fifth Amendment infraction does not necessarily require a taint or fruit of the poisonous tree analysis, and we do not agree with Defendant's application of *Bedolla* to this case.

Even without timely notice of his *Miranda* rights, Defendant's later confession, after the police administered *Miranda* warnings, may still be admissible under current Fifth Amendment standards. The United States Supreme Court in *Oregon v. Elstad,* 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985), set forth the test currently applied. An inadmissible pre-*Miranda* statement may lead to a post-*Miranda* statement which is admissible, if both statements are *voluntarily* given. The Supreme Court stated: "A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* The Court also stated that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* at 318, 105 S.Ct. at 1298. In other words, intervention of *Miranda* warnings may "cure" the very condition that rendered the pre-*Miranda* statement inadmissible. *Id.* at 310–11, 105 S.Ct. at 1293–94; *United States v. Wauneka,* 770 F.2d 1434, 1440 (9th Cir.1985) (discussing factors to consider when determining wheth-

er a post-*Miranda* statement is voluntary and admissible); *Pabon v. Hake*, 763 F.Supp. 1189, 1193–94 (E.D.N.Y.1991) (admitting post-*Miranda* statements); *see also Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (admitting statements of defendant, who while mentally ill, approached police and confessed to homicide after being advised of his *Miranda* rights and without police coercion).

On the other hand, when a pre-*Miranda* statement is both unwarned and involuntary, being the result of a deliberately coercive and manipulative atmosphere designed to undermine a suspect's free will, then it must be presumed that any later, post-*Miranda* statement is not the product of a truly voluntary waiver of the privilege against compulsory self-incrimination. *Elstad*, 470 U.S. at 309–10, 105 S.Ct. at 1293. Where the initial statement is not voluntary, administration of *Miranda* warnings between the first and second statements does not serve as a presumptive cure of the effects of the initial Fifth Amendment violation. *State v. Chaves*, 27 N.M. 504, 508, 202 P. 694, 695 (1921); *see also State v. Austin*, 91 N.M. 586, 588, 577 P.2d 894, 896 (Ct.App.1978) (with involuntary confession, presumption exists that second confession tainted as exploitation of initial illegally obtained statement); *State v. Dickson*, 82 N.M. 408, 409, 482 P.2d 916, 917 (Ct.App.1971) (apparently involuntary confession led to presumption of tainted second confession). When the initial pre-*Miranda* confession is the product of coercive police tactics, the subsequent post-*Miranda* confession must be suppressed unless sufficiently attenuated from the coercive atmosphere to dissipate the taint. *See United States v. Perdue*, 8 F.3d 1455, 1467 (10th Cir.1993) (coercive atmosphere of first interrogation pervading the second interrogation without any cleansing intervening factors); *United States v. Hammond*, 841 F.Supp. 421, 423 (D.D.C.1993) (pre-*Miranda* statements not voluntary where defendant was handcuffed to floor, told he had a big problem, told drugs were found at his apartment, and told that the foregoing "shone a bad light" on defendant's girlfriend and therefore post-*Miranda* statements held inadmissible); *People v. Honeycutt*, 20 Cal.3d 150, 141 Cal.Rptr.

698, 703, 570 P.2d 1050, 1055 (1977) (en banc) (noting it is inconsistent with any notion of a voluntary relinquishment of the privilege when suspect threatened, tricked, or cajoled into waiver); *see also Collazo v. Estelle*, 940 F.2d 411, 421 (9th Cir.1991) (en banc) (subsequent statement given by defendant after initiated second round of interrogation with officers was the result of the coercion), *cert. denied*, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992); *Wauneka*, 770 F.2d at 1441 (referring to factors under a "taint" analysis that the trial court should be guided by when evaluating whether the subsequent confession is sufficiently attenuated from the previous illegal interrogation). Thus, it is only in the circumstance where the pre-*Miranda* statement is involuntary, in the sense of being coerced, as opposed to just the failure to administer *Miranda* warnings, that the post-*Miranda* statement is assessed under a standard comparable to a Fourth Amendment "taint" analysis. *See Elstad*, 470 U.S. at 310–11, 105 S.Ct. at 1293–94.

It is important to observe that the State typically has a heavy burden proving that a post-*Miranda* statement arises from an intelligent, knowing, and voluntary waiver of his right against self-incrimination. *State v. Young*, 117 N.M. 688, 691, 875 P.2d 1119, 1122 (Ct.App.), *cert. denied*, 117 N.M. 773, 877 P.2d 579 (1994); *see also United States v. Amos*, 984 F.2d 1067, 1074 (10th Cir.1993) ("The standard for voluntariness of a waiver is the same as the standard for voluntariness of a confession. The government must prove by a preponderance of the evidence that a defendant's waiver and confession were voluntary.") (citations omitted); *State v. Post*, 109 N.M. 177, 180, 783 P.2d 487, 490 (Ct.App.1989) (state has heavy burden to demonstrate effective waiver of Fifth Amendment right to counsel); *Austin*, 91 N.M. at 587, 577 P.2d at 895 (preponderance of the evidence is the quantum of proof required in cases of inculpatory statements where no prior taint). Courts must be sensitive to the potential for abuse and therefore "voluntariness" must be subjected to exacting scrutiny. Conditions that render an unwarned statement also involuntary are not confined to obvious and heavy-handed tactics, such as physical abuse, lengthy questioning, deprivation of food or sleep, and threats of

harm. An involuntary statement can also be the result of other, more subtle forms of psychological and emotional coercion. *See Connelly,* 479 U.S. at 164 n. 1, 107 S.Ct. at 520 n. 1; *Spano v. New York,* 360 U.S. 315, 323, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (1959); *Estelle,* 940 F.2d at 416. In determining the voluntariness of a statement for Fifth Amendment purposes, courts must examine the background, experience, and conduct of a suspect. *See State v. Greene,* 92 N.M. 347, 349, 588 P.2d 548, 550 (1978). In the context of an unwarned yet voluntary incriminating statement that was later repeated after *Miranda* warnings were given, the Ninth Circuit Court of Appeals interpreted *Elstad* to require an examination of the totality of all the circumstances including the entire course of police conduct. *Wauneka,* 770 F.2d at 1440. The *Wauneka* Court set forth a list of factors to be considered in determining whether the second statement was voluntary. Those factors include: (1) the time lapse between the first and second statements; (2) the degree of police influence exerted on the suspect; (3) whether the suspect was advised that the earlier statement could not be used against him; and (4) whether the suspect was told that the earlier statement *could* be used against him. *Id.* at 1440–41. No one of these factors is dispositive. *Id.* at 1441.

Applying these factors to the factual record in this case, we are satisfied that Officer Holguin met the *Elstad* test. In our view, Officer Holguin's failure to advise Defendant of his *Miranda* rights was not the result of actual and deliberate coercion, or of otherwise improper police tactics. *See Elstad,* 470 U.S. at 300–01, 312–14, 105 S.Ct. at 1288–89, 1294–96. For example, there is no indication in the record that Officer Holguin's pre-*Miranda* conduct was intentionally manipulative or that there were threats or intimidation by the police; nor is there any evidence of deception or intentional misconduct. *See Greene,* 92 N.M. at 351–52, 588 P.2d at 552–53 (second confession voluntary where defendant received no assurances that the statement was for any limited purpose, there was no evidence that defendant's will was in any way subverted, and defendant was told that the interview could be stopped at any time). Thus, we hold that Defendant's pre-*Miranda*

statements were voluntary, although themselves inadmissible. *Cf. Perdue,* 8 F.3d at 1467–68; *Hammond,* 841 F.Supp. at 423. We do not apply a Fourth Amendment taint analysis similar to *Bedolla.* Based on the voluntariness of the unwarned pre-*Miranda* statement, the post-*Miranda* confession is admissible if also voluntarily made.

We are persuaded that Defendant's post-*Miranda* confession was also voluntary in that the officers did not unfairly exploit the earlier, unwarned statements to obtain Defendant's confession. *See Wauneka,* 770 F.2d at 1439–40. For example, the police did not try to deceive Defendant into believing that his pre-*Miranda* statements could be used against him. There was no evidence of threats or intimidation. As soon as Defendant made his inadmissible pre-*Miranda* admission during the booking process of having the gun in his bag, Officer Holguin read Defendant his *Miranda* rights. We also note that after his admission and after being read his *Miranda* rights, Defendant again consented to the search of his bag. When the bag was retrieved and the gun was not found, the officers did not try to take advantage of Defendant's pre-*Miranda* admission. Rather, Defendant himself told officers that his girlfriend must have taken the gun out of the bag, and Defendant himself called his girlfriend with instructions to surrender the gun to the police. After examining all the circumstances leading up to Defendant's ultimate post-*Miranda* confession, we hold that, as with the *Elstad* case, the *Miranda* warnings cured the effects of the prior violation making the later statements admissible.

### Defendant Should Have the Opportunity to Withdraw Plea

 Having determined that Defendant's pre-*Miranda* statements should have been suppressed, we must decide whether to remand and afford Defendant an opportunity to withdraw his plea. In *State v. Esguerra,* 113 N.M. 310, 315, 825 P.2d 243, 248 (Ct.App. 1991), this Court observed that if improperly admitted evidence could have influenced a defendant's decision to plead guilty, there is a fair inference that the evidence contributed to the plea. In *Esguerra,* we reversed and remanded to afford the defendant an opportunity to withdraw the guilty plea. *Id.*

In the present case, it would be pure speculation for this Court to try discerning whether Defendant would still have entered a plea of guilty if (1) the trial court had suppressed his pre-*Miranda* admission (having the gun in his bag), while (2) admitting into evidence his post-*Miranda* confession and the gun itself, as the trial court is now instructed to do. Unlike the ordinary post-trial appeal, this Court is unable to evaluate what evidence or defenses Defendant would have produced on his own behalf under this new scenario. *See United States v. Weber*, 668 F.2d 552, 562 (1st Cir.1981), *cert. denied*, 457 U.S. 1105, 102 S.Ct. 2904, 73 L.Ed.2d 1313 (1982); *Jones v. Wisconsin*, 562 F.2d 440, 445–46 (7th Cir.1977); *People v. Ruggles*, 39 Cal.3d 1, 216 Cal.Rptr. 88, 95, 702 P.2d 170, 177 (1985) (en banc); *People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 421, 528 P.2d 1, 29 (1974) (en banc), *overruled on other grounds by People v. DeVaughn*, 18 Cal.3d 889, 135 Cal.Rptr. 786, 789, 558 P.2d 872, 875 (1977) (en banc). We also note Defendant's guilty plea was entered on the express, stipulated condition that the plea could be withdrawn if he was successful on appeal. Here, Defendant is partially successful. Accordingly, we remand so that Defendant may have the opportunity to reassess the admissible evidence in this case and either plead guilty or proceed to trial. Therefore, we need not decide whether sufficient evidence existed to support the conviction following the plea agreement.

CONCLUSION

We reverse the trial court's decision not to suppress Defendant's pre-*Miranda* statements and affirm the trial court's decision not to suppress Defendant's post-*Miranda* statements, including his confession. We remand so that Defendant may have the opportunity to withdraw his guilty plea and proceed to trial on this basis.

IT IS SO ORDERED.

APODACA, C.J., and WECHSLER, J., concur.