**UNITED STATES of America**

**v.**

**David A. SILVA, Defendant.**

**No. 89 Cr. 0054 (DNE).**

United States District Court,
S.D. New York.

June 15, 1989.

Benito Romano, U.S. Atty., S.D.N.Y. (Elizabeth Glazer, Asst. U.S. Atty., of counsel), for U.S.

John H. Jarvis, New York City, for defendant.

### MEMORANDUM & ORDER

EDELSTEIN, District Judge:

A grand jury sitting in this district handed up an indictment charging the defen-

---

dant, David A. Silva, with one count of armed robbery in violation of 18 U.S.C. § 2113(d). Subsequently, the grand jury handed up a superseding indictment charging the defendant with five counts of armed robbery, in violation of 18 U.S.C. § 2113(a); five counts of assault in the commission of an armed robbery, in violation of 18 U.S.C. § 2113(d); and one count of receipt of ammunition in interstate commerce after being convicted of a felony, in violation of 18 U.S.C. § 922(g). The defendant has moved this court for an order suppressing certain physical evidence obtained during the execution of a search warrant. The court held a hearing on April 27, 1989 on the issue of suppression. The following constitutes the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

The essence of the indictment is that, from June 24, 1988 to December 30, 1988, the defendant robbed slightly over $70,000 from five banks. On January 12, 1989, the defendant was arrested on a complaint alleging the one bank robbery that was charged in the original indictment. On the same day, six agents of the Federal Bureau of Investigation ("FBI") executed a warrant authorizing the search of Silva's home in Brooklyn, New York. Tr. at 4.[1] The warrant authorized a search for evidence and fruits and instrumentalities of the crime.[2]

In executing the warrant, Special Agent Faye Greenlee of the FBI came across a brown satchel on the floor of the master bedroom. Tr. at 5. Agent Greenlee then opened the satchel to look for items listed in the warrant and emptied the contents on the floor. Tr. at 5–6. The bag contained a pair of glasses and a yellow spiral notebook. *Id.* Agent Greenlee leafed through

the notebook page by page to look for money. Tr. at 6.

What Agent Greenlee found was a five-page letter apparently written by the defendant to "Dearest Samantha." Tr. at 7. The first page of the letter directed "Samantha" to destroy the letter upon reading it. *Id.* The statement aroused Agent Greenlee's suspicions and prompted her to read the entire letter page by page. Tr. at 6 & 10. The first indication that the letter was evidence of a crime was on page three, which states in part: "I debate inside myself if I should do certain things which aren't very legal." On page four it goes on to state: "I'll never allow my family to become street people. Not as long as I have a gun and there is a bank. This letter is written on the eve of such an event."

## CONCLUSIONS OF LAW

The defendant contends that the seizure of the letter was outside the scope of the search warrant and therefore unreasonable and in violation of the fourth amendment. The government argues that the seizure of the letter, although admittedly outside the scope of the warrant, was justified under the plain view doctrine.

■ The plain view doctrine has three elements: A lawful search must be in progress, the evidence is discovered inadvertently, and it is immediately apparent that the discovered item is evidence of a crime. *See Coolidge v. New Hampshire*, 403 U.S. 443, 464–470, 91 S.Ct. 2022, 2037–2040, 29 L.Ed.2d 564 (1971); *see also Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In the instant case, the initial entry was justified by a valid search warrant. As to the second element, the notebook was inadvertently discovered while searching in the satchel, which could reasonably have contained any of the items listed in the search warrant. The crux of

---

1. The abbreviation "Tr." refers to the transcript of the suppression hearing.

2. The warrant authorized the seizure of the following of items: a black automatic handgun, a holster, a police scanner radio, a dark strapped shoulder bag, stocking masks, a black watch, a tan trenchcoat, a light-colored three piece suit, a dark blue pin-striped three piece suit, a light colored polka dot tie, a maroon tie with dots, a broad striped tie, a pair of tassel shoes, a pair of black dress shoes with laces, wire-rimmed sunglasses, and driving gloves. Agent Greenlee testified that she was looking for "a gun, a holster, ammunition, certain items of clothing, business suits, ties, ski masks, glasses...." Tr. at 5.

the issue is whether the incriminating nature of the evidence was immediately apparent to Agent Greenlee.

The "immediately apparent" language in *Coolidge* is deceptively simple. Lower courts applying *Coolidge* have held that whether the incriminating nature of an item is "immediately apparent" depends to some degree on the item. Courts have almost unanimously concluded that an officer may cursorily inspect books, documents, or ledgers to determine whether they constitute seizable evidence, even in the absence of probable cause. *See United States v. Ochs*, 595 F.2d 1247, 1257 n. 8 (2d Cir.), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979); *United States v. Hillyard*, 677 F.2d 1336, 1342 (9th Cir. 1982); *United States v. Roberts*, 619 F.2d 379, 381 (5th Cir.1980); *United States v. Scios*, 590 F.2d 956 (D.C.Cir.1978) (en banc); *United States v. Dichiarinte*, 445 F.2d 126 (7th Cir.1971); *United States v. Remy*, 658 F.Supp. 661, 669, n. 2 (S.D.N.Y. 1987); *United States v. Santarsiero*, 566 F.Supp. 536, 546 (S.D.N.Y.1983).

In 1987, however, the Supreme Court decided the case of *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In that case, a bullet fired through the floor of the defendant's apartment struck and injured the occupant of the apartment below. The police entered the defendant's apartment to search for the shooter, weapons, and additional victims. Upon entering the apartment, a police officer saw two sets of expensive-looking stereo equipment in the "squalid and otherwise ill-appointed four-room apartment." *Hicks, supra*, 480 U.S. at 323, 107 S.Ct. at 1151–1152. Suspecting that the equipment might have been stolen, the officer moved a turntable to view its serial number. A computer check of the serial number revealed that the turntable was in fact stolen.

The issue before the Court was whether the officer properly moved the stereo pursuant to the plain view doctrine. The Court reasoned that the moving of the turntable constituted a search for fourth amendment purposes. Upon arriving at this conclusion, the Court further reasoned that the "search" of the turntable was improper under the fourth amendment because the officer did not have probable cause to believe the stereo was stolen until after revealing the serial number.[3]

The Court's finding that moving the turntable was a "search" is the dispositive issue. Clearly, a search of a residence must be predicated on probable cause.[4] In light of *Hicks*, courts must reanalyze *Ochs, supra*, 595 F.2d 1247 and the other cases cited above that hold an officer may make a cursory inspection of books or documents to determine their evidentiary value.[5] The Court stated in *Hicks* that " 'the distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches' is much more than trivial for Fourth Amendment purposes." *Hicks, supra*, 480 U.S. at 325, 107 S.Ct. at 1153

---

3. The State of Arizona conceded there was no probable cause. The Court, however, did not independently analyze the facts and circumstances surrounding the search to determine probable cause. In point of fact, Justice O'Connor, dissenting, was of the view that the officer did have probable cause to conduct a search based on the squalor of the apartment and the incongruous presence of, not one, but two expensive stereos of a type that are commonly stolen. Nevertheless, the majority decision is premised on the assumption that there was no probable cause and this court must accept that conclusion.

4. The Supreme Court has upheld seizures on a lesser standard when the seizure is minimally intrusive and when operational necessity renders such a seizure the only practicable means of detecting certain crimes. *See Hicks*, 480 U.S.

at 327, 107 S.Ct. at 1153 citing *United States v. Place*, 462 U.S. 696, 709, and n. 9, 103 S.Ct. 2637, 2645, and n. 9, 77 L.Ed.2d 110 (1983); *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). But the Court has never suggested that the search of a residence is ever justified on any standard other than probable cause, whether with a warrant or without a warrant.

5. Justice O'Connor's dissent cites *Ochs, Hillyard*, and *Roberts*, among other cases, to show the prevailing rule in the lower courts that cursory inspections require only reasonable suspicion. *See Hicks, supra*, 480 U.S. at 336–37, 107 S.Ct. at 1158–1159. The dissent makes clear that the opinion of the court would compel a different conclusion in those situations.

(quoting, in part, Justice Powell's dissent). This court can hardly imagine a less intrusive action than moving a stereo turntable to view its serial number. By comparison, the opening of a notebook or document is, if anything, a more significant intrusion since it is bound to reveal something of much greater personal value than the bottom of a turntable. Accordingly, the court is constrained to conclude that, after *Hicks,* even the minor investigation of a notebook beyond inspecting what is visible must constitute a search.[6]

■ The corollary of this conclusion is that an officer may not inspect a book or document beyond reading what is plainly visible unless he or she has probable cause to proceed with the search, independent of the justification for the initial intrusion. For instance, suppose an officer lawfully in a premises finds pervasive evidence that it was used to consummate drug sales. If he or she then finds a ledger or notebook amid the drug paraphernalia, it is not inconceivable that the officer would have probable cause to open the book because an experienced drug enforcement agent would know that drug sales are frequently recorded in a ledger or notebook.

■ Applying these principles to the case at bar, the court must reject the government's contention that once the notebook was in plain view the agent was justified in opening and reading it to ascertain its value as evidence. Although this conclusion would have been correct under *Ochs, supra,* 595 F.2d 1247, the holding and reasoning of *Hicks* makes that position untenable. *See Hicks, supra,* 480 U.S. 336–37, 107 S.Ct. at 1158–1159 (O'Connor, J., dissenting); *United States v. Londono,* 659 F.Supp. 758, 762–63 (E.D.N.Y.1987), *aff'd sub nom. United States v. Carmona,*

858 F.2d 66 (2d Cir.1988). Any act on the part of an agent beyond merely viewing what is already exposed would clearly constitute a search. *See United States v. Paulino* 850 F.2d 93, 98 (2d Cir.1988) (picking up and examining pack of bills that turned out to be counterfeit constitutes search under *Hicks* ), *cert. denied,* —— U.S. ——, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989); *Londono, supra,* 659 F.Supp. at 762–63 (touching brick-shaped object with one finger causing it to fall constitutes a search). Therefore, the act of opening the notebook and looking through it page by page is undoubtedly a search, which could not be conducted absent probable cause.

The testimony at the suppression hearing makes it patent that until the agent read the third page of the letter there was no probable cause to believe that the notebook contained evidence of a crime. The notebook had no markings on the cover and nothing to suggest its contents. Further, the facts of the case do not suggest a likelihood—much less probable cause—that the notebook would contain evidence of a crime. The situation is different than the example discussed previously of the ledger found among paraphernalia of drug sales. Thus, the court finds that the agent searched the notebook without probable cause.

■ The testimony at the hearing also raised the possibility that the warrant provided the authority for the agent to search inside the notebook as a possible repository of the items in the warrant. A search warrant must "particularly describe the ... things to be seized." U.S. Constitution, Amendment IV.[7] Agent Greenlee testified that she inspected the notebook to look for money.[8] Tr. at 6. The warrant, however,

---

6. One point must be clarified. The court does not hold that an officer cannot read a document or book if it is plainly visible without opening or disturbing it in any way. The holding is limited to finding that if the incriminating nature of the document cannot be readily ascertained without moving or disturbing it, an officer may not, absent probable cause move or further search the book or document.

7. For a listing of the items described in the warrant *see supra* note 5.

8. On cross-examination, she testified that she believed the book might contain ammunition or a stocking mask. Tr. at 12–13. This assertion does not square with logic. The notebook in question is an $8\frac{1}{2}'' \times 11''$ spiral notebook of approximately $\frac{1}{4}''$ in thickness. The court finds that ammunition or a stocking mask could not have reasonably been concealed in a notebook

not only did not particularly describe the currency in question, it did not mention money at all as one of the items to be seized. *See* Gx 2 (the search warrant); Affidavit of John H. Jarvis, Defendant's counsel, Exhibit 1 (Affidavit in Support of the Warrant Application). The agent, therefore, should not have been looking for money in the first place. An agent may search any area of the premises in which the items described in the search warrant might reasonably be found. It is inconceivable, much less reasonable, that any of the items described in the warrant could reasonably have been located in the notebook. Accordingly, the warrant does not provide a justification for the search of the notebook.

In sum, the opening of the notebook must be viewed as a search because it was a further intrusion—albeit a minimal one— into the defendant's privacy beyond the requirements of the agent's lawful presence, namely the execution of the warrant. Neither the warrant nor probable cause justified the search. As a result, it constituted a warrantless search that is *per se* unconstitutional absent one of the specific exceptions to the warrant requirement. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). No such exception justifies opening the notebook under the circumstances of this case. Consequently, the plain view doctrine does not justify the seizure of the book as the requirements set forth in *Coolidge* and further explicated in *Hicks* have not been satisfied.

## CONCLUSION

For the foregoing reasons, the defendant's motion to suppress physical evidence is granted.

SO ORDERED.

of that size and in such a way as to require the page by page perusal of the book.